THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ALEXANDER SANTOS ROBLES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HOSPITAL WILMA N. VÁZQUEZ, et al.,<br><br>Defendants. | Civil No. 16-2997 (ADC) |

**OPINION AND ORDER**

Defendants Dr. Francisco Javier Paéz ("Dr. Paéz") and Hospital Wilma N. Vázquez ("Hospital Vázquez," collectively, "defendants") seek dismissal of the complaint filed by Alexander Santos-Robles ("Santos") and his parents, Iris N. Robles-Vallejo and Angel Santos-Figueroa (collectively, "plaintiffs").[1] **ECF No. 23.**

For the reasons explained below, the Court **GRANTS** defendants' motion to dismiss at **ECF No. 23.** Plaintiffs' motion for clarification at **ECF No. 50** is **NOTED** and, upon further review, the Court **VACATES** its Order at **ECF No. 49**, thereby **DENYING** defendants' request at **ECF No. 26** to treat the motion to dismiss as unopposed.

**I.  Procedural Background**

Plaintiffs brought suit against Dr. Paéz, Hospital Vázquez, and several other medical

---

[1] The Court granted Hospital Vázquez's motion to join in Dr. Paéz's motion to dismiss. **ECF Nos. 24, 30. Defendants' motion to submit for decision at ECF No. 27 is NOTED.**

providers and insurers[2] based on Santos's visit to the emergency room ("ER") at Hospital Vázquez on November 21, 2015. Santos alleges that he arrived at Hospital Vázquez on November 21 at approximately 9:27 p.m., complaining of "acute abdominal pain after eating two (2) hot dogs," pain that was "localized in the epigastric area with diffuse discomfort."[3] **ECF No. 8** at 5–6. "The physician who attended Alexander [Santos], without performing a proper medical screening," ordered some laboratory work that showed an elevated white blood cell count, i.e., "mild leukocytosis." *Id.* at 6. The physician did not order any other tests, such as radiographic images of the abdominal area, or further lab work. *Id.* The physician treated Santos with the medications "Demerol 25 mg IV, Bentyl, Catapres, Zantac and Maalox with a diagnosis of 'Acute Gastritis and mild leukocytosis.'" *Id.* Dr. Paéz discharged Santos a few hours later, at 12:58 a.m. on November 22, 2015, and provided him with instructions to take certain medications, "Prontix [an antacid], Bentyl," and to follow up with a gastroenterologist "for a possible upper GI Endoscopy." *Id.*

---

[2] The other defendants named in the complaint are, Dr. Vidal; Dr. Sanjurjo; Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsabilidad Profesional Médico-Hospitaliaria ("SIMED"); ABC, DEF, and XYZ Insurance Companies; Moes I–X; the Legal Conjugal Partnerships I–X; John Doe and James Doe; as well as any other Joint Unknown Tortfeasors and their respective XYZ Insurance Companies. **ECF No. 8.** On June 20, 2017, the Court granted plaintiffs' request to voluntarily dismiss SIMED from the case without prejudice. **ECF No. 34.**

[3] Additionally, although defendants reference Federal Rule of Civil Procedure 12(b)(1) and (2) in their motion to dismiss, the arguments contained therein fall within the rubric of a motion to dismiss for failure to state a claim under rule 12(b)(6). *See* **ECF No. 23** at 1, 8. The Court recites the background information in the context of reviewing defendants' rule 12(b)(6) motion to dismiss, accepting "as true all well-pleaded facts alleged in the complaint and draw[ing] all reasonable inferences therefrom in the pleader's favor." *See Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52–53 (1st Cir. 2013) (citation and internal quotation marks omitted).

Later that same day, November 22, 2015, Santos went to the ER at Manatí Medical Center ("Manatí Medical") "complaining of severe abdominal pain, diffused, and that was localized at the right lateral quadrant." *Id.* at 6–7. He was subsequently admitted at Manatí Medical for "a perforated appendicitis" and underwent surgery, at which time several complications arose "due to the perforated appendicitis and pelvic peritonitis, such as: pleural effusion, intraabdominal [sic] abscesses which required multiple drainage procedures." *Id.* at 7. Santos underwent several additional procedures at Manatí Medical, including blood transfusions, dialysis, and eleven days of intubation in the intensive care unit, allegedly "due to the many complications he suffered due to the lack of proper screening and stabilization at Hospital Wilma N. Vázquez." *Id.* Santos was discharged from Manatí Medical on January 15, 2016, almost two months after being admitted. *Id.* He lost seventy pounds during his hospitalization and he continued to require at-home physical therapy after being discharged. *Id.*

Plaintiffs allege that Santos's prolonged hospitalization and need for such extensive and intensive care was "due to the perforation that was not properly screened nor diagnosed at Hospital Wilma N. Vázquez," in contravention of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 USC § 1395dd, and amounted to medical malpractice under Puerto Rico law. **ECF No. 8** at 7–11. Plaintiffs assert federal question jurisdiction under EMTALA and supplemental jurisdiction for their medical malpractice claims. *See* 28 U.S.C. §§ 1331, 1367(a). **ECF No. 8** at 1–2.

Dr. Paéz and Hospital Vázquez filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiffs failed to plead sufficient facts to sustain their EMTALA claims. **ECF No. 23** at 1. Defendants assert that the EMTALA claims must be dismissed, which would eliminate the Court's federal question jurisdiction, thereby also requiring dismissal of the medical malpractice claims arising solely under Puerto Rico law. Furthermore, defendants request the Court treat their motion to dismiss as unopposed. **ECF No. 26.** Plaintiffs' response in opposition to the motion was untimely and they did not request leave from the Court for additional time to respond. **ECF No. 31**.

## II. Legal Standard

In reviewing a motion for failure to state a claim upon which relief must be granted, the Court accepts "as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52–53 (1st Cir. 2013) (citation and internal quotation marks omitted). "[A] complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 53 (quoting Fed. R. Civ. P. 8(a)(2)). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action" and "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)) (additional citation and internal quotation marks omitted). To ascertain

plausibility, "the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)." *Id.* Then, "the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief." *Id.* (noting that a complaint need not "establish a prima facie case" to defeat a rule 12(b)(6) motion to dismiss). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

### III. Analysis

There are several issues before the Court: (a) defendants' request to treat their motions to dismiss as unopposed, **ECF No. 26**; (b) defendants' motion to dismiss in which they challenge the EMTALA claims as inadequately pleaded under rule 12(b)(6); and (c) defendant's motion challenging the Court's supplemental jurisdiction over the state law claims. Each issue will be addressed in turn.

#### A. Motion to Treat the Motion to Dismiss as Unopposed

Because plaintiffs failed to timely reply to defendants' motion to dismiss, defendants request the Court to treat the motion to dismiss as unopposed, waiving any objections plaintiffs may have raised. **ECF No. 26.** "[W]hen deciding a motion to dismiss on the merits, a district court is obliged to accept the factual allegations contained in the complaint as true." *Vega-*

*Encarnación v. Babilonia*, 344 F.3d 37, 41 (1st Cir. 2003). Although a party's failure to timely respond to a motion "renders a party susceptible to involuntary dismissal, pursuant to [Federal Rule of Civil Procedure] 41(b), for failure to prosecute," a party's tardiness in filing a response "does not automatically result in dismissal." *Id.* at 40 (alteration in original) (citation, internal quotation marks, and emphasis omitted). Thus, "the mere fact that a motion to dismiss is unopposed" is insufficient to "relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim." *Id.* at 41. Accordingly, the Court **VACATES** its decision at **ECF No. 49** and **DENIES** defendants' request at **ECF No. 26** to treat their motion to dismiss as unopposed.

### B. EMTALA Claims

EMTALA was enacted "in 1996 in response to claims that hospital emergency rooms were refusing to treat patients with emergency conditions but no medical insurance." *Ramos-Cruz v. Centro Médico del Turabo,* 642 F.3d 17, 18 (1st Cir. 2011). "EMTALA therefore is a limited anti-dumping statute, not a federal malpractice statute." *Id.* (citation and internal quotation marks omitted). The Act "creates private rights of action where hospitals violate [EMTALA's] mandates," *id.*, that can be civilly enforced by aggrieved individuals against "participating hospitals,"[4] 42 U.S.C. § 1395dd(d)(2)(A); *see also del Carmen Guadalupe v. Negrón Agosto*, 299 F.3d

---

[4] In their motion to dismiss, defendants argue that plaintiffs' complaint does not clearly restrict the EMTALA claims to Hospital Vázquez. **ECF No. 23** at 4. Plaintiffs, in their opposition, acknowledge "that EMTALA violations are only applicable against participating hospitals that operate an emergency department . . . and that the law does not apply directly to physicians." **ECF No. 31** at 2.

15, 19 n. 1 (1st Cir. 2002) ("While we have not decided the issue whether EMTALA provides a cause of action against individual physicians, all circuits that have done so have found that it does not." (citation and internal quotation marks omitted)); *Pujol-Alvarez v. Grupo HIMA-San Pablo, Inc.*, 249 F.Supp.3d 591, 597–98 (D.P.R. 2017) (FAB) (collecting cases).

A plaintiff must plead three specific elements to establish an EMTALA claim. For the first two elements, "a plaintiff must show" that, "(1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department" and "(2) the plaintiff arrived at the facility seeking treatment." *Cruz-Vázquez v. Mennonite Gen. Hosp., Inc.*, 717 F.3d 63, 68 (1st Cir. 2013) (citation omitted). The third element requires the plaintiff to show that "the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) released the patient without first stabilizing the emergency medical condition." *Id.* (citation omitted). *See also Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1193–94 (1st Cir. 1995) (noting that "EMTALA does not impose a motive requirement," such as the motive "to shirk the burden of uncompensated care").

The parties do not contest these first two elements—that Hospital Vázquez is a participating EMTALA facility and that Santos arrived at Hospital Vázquez's emergency department seeking medical care. **ECF Nos**. **36** at 2; **16** at 1–2. Defendants' motion to dismiss focuses on whether plaintiffs state a claim for relief pursuant to EMTALA's screening and stabilization provisions. **ECF No. 23** at 3–5.

### 1. Duty to Screen Under EMTALA

To properly allege an EMTALA screening violation, the plaintiff "need not prove that she actually suffered from an emergency medical condition when she first came through the portals of the defendant's facility; the failure [to] appropriately . . . screen, by itself, is sufficient to ground liability as long as the other elements of the cause of action are met." *Cruz-Vázquez*, 717 F.3d at 69 (citation and internal quotation marks omitted). Although "EMTALA does not define what an appropriate medical screening consists of," the First Circuit has described that requirement as a hospital's implementation of screening procedures "reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients" that the hospital provides "uniformly to all those who present substantially similar complaints." *Id.* "The essence of this requirement is that there be some screening procedure, and that it be administered even-handedly." *Id.* (citation and internal quotation marks omitted). Faulty screening, "as opposed to disparate screening or refusing to screen at all, does not contravene the statute." *Id.*

Defendants seek dismissal of plaintiffs' EMTALA screening claim on the ground that the "appropriate protocol was activated" based on the symptoms Santos described to the ER staff at Hospital Vázquez on November 21, 2015. **ECF No. 23** at 4. Defendants state, "We are not in the presence of a disparate treatment, we are faced with a screening based on symptoms present at the time the patient arrived and for which he received attention at an emergency room and the protocol activated for that diagnosis was the correct one**."** *Id.* They argue that under

EMTALA, "the term 'appropriate' does not mean 'correct,' in the sense that the treating emergency physician is not required to correctly diagnose the individual's medical condition," rather, "'appropriate' means that the screening examination was suitable for the symptoms presented and conducted in a non-disparate fashion." *Id.* at 4–5. Defendants argue that whether the doctors at Hospital Vázquez came to the wrong diagnosis is irrelevant; what remains relevant is that they treated Santos with the same protocol they would treat anyone complaining of substantially similar symptoms. *Id.* at 6.

According to plaintiffs' complaint, Santos arrived at the Hospital Vázquez ER with "acute abdominal pain after eating two (2) hot dogs" that "was allegedly localized in the epigastric area with diffuse discomfort." **ECF No. 8** at 6. The hospital staff performed laboratory work, administered medications, and provided discharge instructions in accordance with the ultimate diagnosis of "'Acute Gastritis and mild leukocytosis.'" *Id.* When Santos presented at Manatí Medical, his symptoms were "severe abdominal pain, diffused, and that was localized in the right lateral quadrant." *Id.* at 6–7. Based on those symptoms, the physicians at Manatí Medical proceeded to treat Santos for appendicitis.

The complaint alleges that the "disparate treatment" Santos received at these two distinct hospitals is proof that Hospital Vázquez failed to screen him properly because, had it done so, he would have been diagnosed by their staff with appendicitis. Thus, plaintiffs allege, Hospital Vázquez violated EMTALA when it "failed to activate 'acute appendicitis' protocol and other

medical protocols" and performed a medical evaluation "'so cursory as to equal no examination at all.'" *Id.* at 8–9.

This argument is premised upon several faulty assumptions. First, the argument presumes that the screening protocols *between* different hospitals should be the same. EMTALA imposes no such requirement. Indeed, EMTALA specifically does not establish standardized screening protocols so as to allow individual facilities to develop protocols based on the resources available at each particular facility. *See* 42 U.S.C. § 1395dd(a) (explaining that a covered hospital "must provide for an appropriate medical screening examination within the capability of the hospital's emergency department"); *Ramos-Cruz,* 642 F.3d at 19 (rejecting a similar argument as essentially "creat[ing] a federal malpractice cause of action"). Thus, to the extent the facts alleged may show that Santos received "disparate treatment" in the screening protocols employed at Hospital Vázquez as compared to Manatí Medical, the distinction is irrelevant. Any such distinction between the two facilities' screening protocols has nothing to do with whether Hospital Vázquez appropriately applied its own screening protocol pursuant to EMTALA.

Additionally, plaintiffs' disparate treatment claim is premised on the fallacy that Santos arrived at each ER complaining of the same ailments. EMTALA envisions uniform treatment amongst patients "who present substantially similar complaints." *Cruz-Vázquez*, 717 F.3d at 69. According to the complaint, Santos arrived at Hospital Vázquez complaining of "acute" pain

"localized" in the "epigastric" region, which is the upper-central region of the abdomen, that began "after eating two (2) hot dogs." *See generally* Merriam–Webster Online Medical Dictionary, "Epigastric," https://www.merriam-webster.com/dictionary/epigastric. He arrived at Manatí Medical complaining of a higher degree of discomfort—"severe"—that was "localized" in a different region—"right lateral quadrant"—with no attribution to hotdogs or other pernicious dishes. Thus, plaintiffs' argument that his identical symptoms should trigger identical screening protocols is a nonstarter because plaintiffs did not plead identical symptoms. The sole similarity between these symptom sets is that each involve abdominal pain. The Court is unwilling to endorse the unreasonable inference essential to plaintiffs' claim, that any patient arriving at any ER complaining of abdominal discomfort should be screened for appendicitis.

Plaintiffs' EMTALA screening claim also presupposes that the only correct screening procedure that Hospital Vázquez could have employed was the protocol for appendicitis because that is what Santos was ultimately diagnosed with. Plaintiffs alleged that Hospital Vázquez did not "perform[] a proper medical screening," because the staff "only ordered some laboratories" and failed to perform "other" tests that would, presumably, have led to an appendicitis diagnosis, such as "radiographic images of the abdominal area" and "any other laboratory." **ECF No. 8** at 6.

The accuracy of a hospital's diagnosis is not properly addressed in an EMTALA screening claim. *Cruz-Vázquez,* 717 F.3d at 69 (noting that "faulty screening, in a particular case, as opposed

to disparate screening or refusing to screen at all, does not contravene the statute"); *del Carmen Guadalupe*, 299 F.3d at 21 (explaining "that EMTALA is not intended to ensure each emergency room patient a correct diagnosis" (citation and internal quotation mark omitted)); *Martínez v. Hosp. Menonita de Cayey*, 32 F.App'x 591, 592 (1st Cir. 2002) (per curiam) ("EMTALA protects against differential treatment, not negligence."). Moreover, plaintiffs allege in the complaint that Hospital Vázquez did perform more than a "cursory" medical evaluation. The hospital staff performed multiple lab tests that led to the diagnosis and treatment of an upper GI issue. Santos was given multiple medications at the hospital, one intravenously, and discharged after almost three-and-a-half hours of his arrival, with instructions to continue taking several medications and to follow-up with a specialist. Plaintiffs do not allege that this treatment was disparate from other patients presenting at Hospital Vázquez with substantially similar symptoms—acute epigastric pain with a possible dietary aggravator, e.g., having recently consumed "two (2) hotdogs." Thus, plaintiffs have failed to properly allege an EMTALA screening claim. Defendants' request to dismiss this claim is **GRANTED**.

**2. Duty to Stabilize Under EMTALA**

The duty to stabilize under EMTALA "prescribes a precondition the hospital must satisfy before it may undertake to transfer the patient." *Alvarez-Torres v. Ryder Mem'l Hosp., Inc.*, 582 F.3d 47, 51 (1st Cir. 2009) (citation and internal quotation marks omitted). "Transfer" under EMTALA includes the discharge of a patient. 42 U.S.C. § 1395dd(e)(4). Thus, the duty "to

stabilize" is a duty "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer." *Id.* § 1395dd(e)(3)(A).

Plaintiffs allege that Hospital Vázquez "discharged Santos in a clear unstable medical condition on November 22, 2015 (at 12:58 a.m.) without a re-evaluation of his medical condition or diagnosis" and "failed to timely and adequately transfer [him] to another hospital with the capability to provide the medical care for Santos's emergency medical condition, which was his ruptured appendix." **ECF No. 8** at 8.

Plaintiffs have failed to plead any facts in support of its conclusion that Santos was "clear[ly] unstable" when he was discharged from Hospital Vázquez. Santos's subsequent two-month admission at Manatí Medical may support the inference that he was unstable when he was discharged from Hospital Vázquez, but this inference ultimately addresses the accuracy of Hospital Vázquez's diagnosis. Santos was discharged from Hospital Vázquez with "Acute Gastritis and mild leukocytosis," stabilization of which may involve different treatment and standards than his subsequent diagnosis of "ruptured appendix." Whether Hospital Vázquez's diagnosis was wrong is not grounds for relief under EMTALA. Accordingly, plaintiffs' cursory pleading merely recites an EMTALA stabilization claim and is insufficient to survive defendants' motion to dismiss. *See Rodríguez-Reyes*, 711 F.3d at 53 ("While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless

must contain more than a rote recital of the elements of a cause of action . . . [and] must contain sufficient factual matter to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)). Defendants' motion to dismiss this claim is **GRANTED**.

### C. Supplemental Jurisdiction Claims

Last, defendants request plaintiffs' state law claims for malpractice be dismissed without prejudice if the Court dismisses the EMTALA claims. Because the Court dismisses plaintiffs' EMTALA claims, the sole basis of federal jurisdiction in this case, the defendants' request to dismiss the state law claims without prejudice is GRANTED. *See* 28 U.S.C. § 1367(a).

### IV. Conclusion

Defendants' motion to dismiss at **ECF No. 23** is **GRANTED**. Plaintiffs' Amended Complaint at **ECF No. 8** is **DISMISSED** as to all parties**.** Plaintiffs' EMTALA claims are dismissed with prejudice and their malpractice claims are dismissed without prejudice. Plaintiffs' motion for clarification at **ECF No. 50** is **NOTED**. The Court **VACATES** its order at **ECF No. 49**, thereby **DENYING** defendants' request at **ECF No. 26** to treat the motion to dismiss as unopposed. Defendants' motion to submit their motion to dismiss for decision at **ECF No. 27** is **NOTED.** The Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of March, 2018.

S/AIDA M. DELGADO-COLÓN
**Chief United States District Judge**